**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

TROY JOHNSON,

                                        Plaintiff,

          v.                                                      No. 02-CV-1070
                                                                      (GLS/DRH)

GEORGE B. DUNCAN, Superintendent,
Great Meadow Correctional Facility; J.
BALLARD, Facility Maintenance
Supervisor of Great Meadow Correctional
Facility; R. BELLAMY, Asst. Dir. CORC;
and JAMES PLESCIA, First Deputy
Superintendent, Acting Superintendent of
Great Meadow Correctional Facility,

                                        Defendants.

_____

**APPEARANCES:**                              **OF COUNSEL:**

TROY JOHNSON
Plaintiff Pro Se
No. 98-A-2072
Clinton Correctional Facility
Post Office Box 2001
Dannemora, New York 12929

HON. ELIOT SPITZER                            DAVID FRUCHTER, ESQ.
Attorney General for the                      Assistant Attorney General
 State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER[1]**

          Plaintiff pro se Troy Johnson ("Johnson"), an inmate in the custody of the New York

_____

          [1] This matter was referred to the undersigned for report and recommendation pursuant
to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

State Department of Correctional Services (DOCS), brings this action pursuant to 42

U.S.C. § 1983. Johnson contends that the defendants, four DOCS employees, violated his

constitutional rights by failing to provide him with sanitary living conditions in violation of

his constitutional rights. Compl. (Docket No. 1).  Presently pending is defendants' motion

for summary judgment pursuant to Fed. R. Civ. P. 56(b). Docket No. 62.  Johnson

opposes the motion.  Docket No. 67.  For the reasons which follow, it is recommended

that defendants' motion be granted.


## I. Background

The facts are presented in the light most favorable to Johnson as the non-moving

party. See Ertman v. United States, 165 F.3d 204, 206 (2d Cir. 1999).

In August 1999, Johnson was transferred to the E block housing unit ("E block") at

Great Meadow Correctional Facility ("Great Meadow"). Compl. at ¶ 13.[2]  In January 2000,

Johnson began to experience symptoms of dizziness, shortness of breath, low energy,

chills, and fever. Id. at ¶ 14.  During January 2001, Johnson was confined to keeplock[3] for

seven days during which he experienced an increase in these symptoms.  Id. at ¶ 16. In

March 2001, Johnson concluded that the symptoms he experienced were directly

---

[2]Under Fed. R. Civ. P. 56(e), the non-moving party must offer evidence in sworn affidavits to oppose a properly supported motion for summary judgment.  A verified complaint meets this requirement.  See Ford v. Wilson, 90 F.3d 245, 246 (7th Cir. 1996); King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994).  The complaint here was verified and will, therefore, be considered on this motion.

[3]"Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities." Green v. Bauvi, 46 F.3d 189, 192 (2d Cir. 1995); N.Y. Comp. Codes R. & Regs. tit. 7, § 301.6 (1995).

connected to a bird infestation in the E block. Id. at ¶¶ 20-22.  In September 2001,

Johnson was transferred to another housing unit and his symptoms thereafter improved.

Id. at ¶ 23.

        In May 2002, Johnson was transferred back into the E block and his symptoms

returned. Compl. at ¶ 24. On May 30, 2002, Johnson filed grievance number 33,258-02 in

which he requested removal of the bird infestation. Bellamy Aff. (Docket No. 62) at Ex. C.

The Inmate Grievance Resolution Committee referred the grievance to the Superintendent

for action, stating that methods other than trapping birds in cages should be considered.

Id. The superintendent granted Johnson's grievance to the extent that the bird cages were

checked twice per day. Id. at Ex. D. On appeal to the Central Office Review Committee,

Johnson's grievance was denied. Id. at Ex E.  This action followed. Johnson was

subsequently transferred to Clinton Correctional Facility on May 1, 2004. Docket No. 55.


## II.  Discussion

### A. Motion for Summary Judgment

        A motion for summary judgment may be granted if there is no genuine issue as to

any material fact if supported by affidavits or other suitable evidence and the moving party

is entitled to judgment as a matter of law. The moving party has the burden to show the

absence of disputed material facts by informing the court of portions of pleadings,

depositions, and affidavits which support the motion. Fed. R. Civ. P. 56(c); Celotex Corp.

v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of

the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 250

(1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).  When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude. Id.  However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247.

### B. Injunctive Relief

Johnson seeks injunctive relief in the form of screens placed over windows at Great Meadow, termination of the bird infestation, and disinfection of all areas infected by bird feces. Defendants contend that Johnson is not entitled to any injunctive relief. To have standing to sue for injunctive relief relating to a correctional facility, a plaintiff must still be incarcerated at that facility.  Young v. Coughlin, 866 F.2d 567, 568 n.1 (2d Cir. 1989).  "[A] transfer to another prison facility moots an action for injunctive relief against the transferring facility." Prins v. Coughlin, 76 F.3d 504, 506 (2d Cir.1996); Beyah v. Coughlin,

-4-

789 F.2d 986, 988 (2d Cir. 1986).  All of the injunctive relief requested by Johnson regards the conditions at Great Meadow and Johnson was transferred from Great Meadow to Clinton Correctional Facility on May 1, 2004.  Docket No. 55. Because Johnson is no longer incarcerated at Great Meadow, his request for injunctive relief is moot.

Defendants also contend that Johnson has received all the relief he seeks.  In June 2001, netting was installed on windows without screens and birds were trapped and removed from the facility. Potter Aff. (Docket No. 62) at ¶ 8. A project to install new nuisance screens on the facility windows began in February 2003 and was completed in September 2003. Id. at  ¶¶ 16-17. The areas of the facility affected by bird droppings were professionally cleaned and disinfected. Id. at ¶ 17. Thus, all of the injunctive relief requested by Johnson has been completed and Johnson's request is also moot for this reason.

It is recommended for both reasons that defendants' motion for summary judgment as to Johnson's claims for injunctive relief be granted.


### C. Qualified Immunity

Defendants contend that they are entitled to qualified immunity. Qualified immunity protects government officials from civil liability if "it was objectively reasonable for them to believe their acts did not violate . . ." clearly established rights. Provost v. City of Newburgh, 262 F.3d 146, 160 (2d Cir. 2001) (quoting Weyant v. Okst, 101 F.3d 845, 857 (2d Cir. 1996)); see also Anderson v. Creighton, 483 U.S. 635 (1987).  In determining whether a right was clearly established, a court should consider "(1) whether the right in

question was defined with 'reasonable specificity,' (2) whether the decisional law of the Supreme Court and the [Second Circuit] support the existence of the right in question, and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." Jermosen v. Smith, 945 F.2d 547, 550 (2d Cir. 1991). This does not require that "the very action in question [be] previously . . . held unlawful," Mitchell v. Forsyth, 472 U.S. 511, 535 n.12 (1985), but merely that the "unlawfulness must be apparent." Anderson, 483 U.S. at 639.

There is a clearly established right to prison environmental conditions that do not result in an "unquestioned and serious deprivation[] of basic human needs." Anderson v. Coughlin, 757 F.2d 33, 35 (2d Cir. 1985). In addition, defendants must have acted with deliberate indifference to the inmate's health or safety. Jolly v. Coughlin, 76 F.3d 468, 480 (2d Cir. 1996). Here, defendants show that they took reasonable steps to alleviate the bird infestation at Great Meadow.

In June 2001, after receiving complaints, a construction request was submitted to have nuisance screens installed on the cell block windows. Potter Aff. at ¶¶ 6-7. While the project was placed on hold due to staffing issues, netting was installed on the windows without screens, birds were trapped and removed from the facility, inmate work crews cleaned the areas affected by bird droppings, the Adirondack Nuisance Wildlife and Pest Control was contacted to assist in the removal of birds from the facility, and broken windows were replaced. Id. at ¶¶ 7, 10-11. This unrebutted evidence suffices to demonstrate that defendants could reasonably have believed that by taking these actions, they did not violate Johnson's constitutional rights. In addition, their actions show that they did not act with a sufficiently culpable state of mind or that their "conduct [was] undertaken

-6-

for the purpose of causing harm." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).

While Johnson argues that the measures taken by defendants in alleviating the bird infestation were inadequate, he fails to raise an issue of material fact as to whether defendants reasonably believed their actions did not violate any inmate's constitutional right.  Johnson contends that defendants refused to take action although he filed grievances regarding this issue.  However, defendants show that they reasonably took all steps that were available to ensure sanitary living conditions.

It is recommended that defendants' motion on this ground be granted.


### D. Physical Injuries

Johnson seeks compensatory and punitive damages for past, present, and future loss of health, pain and suffering, and psychological trauma caused by the conditions at Great Meadow.  Defendants contend that Johnson is unable to show that his allegations of health problems were caused by the bird infestation at Great Meadow.

Defendants argue that because Johnson has not disclosed an expert witness prior to the completion of discovery, he will be unable to introduce any medical evidence to support a causal connection between his health ailments and the bird infestation and, therefore, the complaint should be dismissed.[4]  Expert medical opinion evidence is generally required if the cause of an injury is not within the common knowledge of a lay person. Wills v. Amerada Hess Corp., 379 F.3d 32, 46 (2d Cir. 2004); Barnes v. Anderson,

---

[4] The deadline for disclosure of expert witness was November 14, 2003. The scheduling order provided that failure to disclose any medical provider that plaintiff intends to call at trial would preclude the testimony of such witness at trial. Docket Nos. 16, 40.

202 F.3d 150, 159 (2d Cir. 1999). "Expert testimony is only necessary if the witness cannot provide evidence of causation." Faryniarz v. Nike, Inc., No. 00 Civ. 2623 (NRB), 2002 WL 530997, at *2 (S.D.N.Y. Apr. 8, 2002).  In the context of medical indifference claims under § 1983, a plaintiff is not required to produce "expert medical testimony" but cannot simply rely on conclusory allegations. Hathaway, 37 F.3d at 68.  Here, Johnson alleges that the bird feces dried, became airborne, was inhaled or ingested, and thus caused him to experience symptoms of dizziness, shortness of breath, low energy, chills, and fever.

        A jury could not reasonably conclude without expert medical testimony that Johnson's symptoms were due to exposure to bird feces. Allegations as to the frequency of Johnson's symptoms, their proximate relationship to his confinement in the E block, and their improvement when transferred to another cell block afford some evidence of a connection to the bird infestation.  However, various other material knowledge is not within the common knowledge of lay people, including the amount and frequency of infestation necessary to affect human beings, how such infestation becomes an airborne toxin, how it is inhaled or ingested, the quantity and frequency of exposure necessary to cause the ailments cited by Johnson, and whether the exposure alleged by Johnson was consistent with the ailments he alleges.  The absence of expert testimony as to these issues precludes Johnson from offering evidence sufficient to sustain his claims. See Helling v. McKinney, 509 U.S. 25, 35 (1993) (exposure to secondhand smoke must be supported by a scientific and statistical inquiry); Wills, 379 F.3d at 46 (expert testimony required to establish causation of cancer in toxic tort case); Pack v. Artuz, 348 F. Supp. 2d 63, 80 (S.D.N.Y. 2004) (expert testimony required to show that duration and frequency of

exposure to asbestos caused development of cancer).  Defendants' motion on this ground should be granted.

Defendants also contend that Johnson's allegations of symptoms such as dizziness, shortness of breath, low energy levels, chills, fever, nausea, headaches, and chest pains are not supported by his ambulatory health record. However, a failure to document symptoms in the health record or failure to seek treatment for symptoms does not necessarily mean that there is no question of material fact regarding Johnson's alleged ailments. There were several reports in the ambulatory health record that Johnson was seen for headaches, cold symptoms, and rashes. In addition, Johnson contends that he did not report some of his symptoms or that they were not charted. Pl. Resp. (Docket No. 67), Ex. M at 18.  Defendants also argue that because Johnson cannot demonstrate physical injury, his claim for emotional injury must be dismissed pursuant to 42 U.S.C. 1997e(e) (requiring a showing of physical injury prior to any award of damages for mental or emotional injury).  However, Johnson has alleged sufficient facts from which a factfinder could reasonably conclude that the requirements of § 1997e(e) have been met. Defendants' contention to the contrary should be rejected.


### III.  Conclusion

For the reasons stated above, it is hereby:

**RECOMMENDED** that defendants' motion for summary judgment (Docket No. 62) be **GRANTED** as to all claims and all defenses.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATED: September 6, 2005
      Albany, New York

_David R. Homer_

United States Magistrate Judge

-10-